IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-CR-59-TAV-DCP |
| | ) | |
| DAVID NEWMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to

28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate. The parties appeared for a motion hearing on July 13, 2020,

on the following motions by Defendant, all filed on January 17, 2020:

(1) Motion for Pretrial Notice of Government's Intent to Use 404(b) Evidence [Doc. 15];

(2) Motion for a Witness List [Doc. 16];

(3) Motion for Designation of Specific Evidence the Government Intends to Use in its Case-In-Chief [Doc. 17];

(4) Motion for Hearing to Determine Existence of Conspiracy [Doc. 19];

(5) Motion for Bill of Particulars [Doc. 20];

(6) Defendant's First Specific Brady Motion for Disclosure of Specific Items of Impeaching Information [Doc. 21]; and

(7) Motion for Disclosure of the Identity and Location of Cooperating Individuals [Doc. 22]; and

1

(8) Motion to Suppress All Statements by Defendant Obtained in Violation of the Right Against Self Incrimination under U.S. Const. Amend V [Doc. 23].

Assistant United States Attorneys Anne-Marie Svolto and Louis Manzo appeared on behalf of the Government. Attorneys Robert R. Kurtz and Wesley D. Stone represented Defendant David Newman, who was also present. After hearing the arguments of counsel, the Court took the motions under advisement. The Court requested supplemental briefing on the motion for disclosure of confidential informants [Doc. 22]. The parties filed supplemental briefs [Docs. 83 & 84] on October 16, 2020.

## I. PRETRIAL NOTICE OF INTENT TO USE 404(B) EVIDENCE [DOC. 15]

Defendant requests that the Court order the Government to provide, at least thirty (30) days prior to trial, a written notice of all evidence of other crimes, wrongs, or acts, falling under Rule 404(b) of the Federal Rules of Evidence, that the Government intends to introduce at trial. Defendant asserts such an order is necessary to give time to object to this evidence's admissibility, as well as to adequately prepare to defend against it. Along with this request, Defendant further moves for a hearing on the admissibility of this evidence to be conducted, outside the presence of the jury, before it is introduced by the Government.

The Government's response [Doc. 29] points out that the Court's Order on Discovery and Scheduling [Doc. 6] directs the Government to provide notice of the general nature of the 404(b) evidence seven (7) days prior to trial. At the time responses to this motion were filed on January 31, 2020, the Government was unaware of any 404(b) evidence it would use at trial [Doc. 6]. While the Government objects to giving earlier notice [Doc. 29], it states that it will comply with the Court's Order on Discovery and Scheduling [Doc. 6].

2

Rule 404(b) of the Federal Rules of Evidence provides that upon a defendant's request, the Government must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it[.]" Fed. R. Evid. 404(b)(3)(A). The notice must be in writing and must state the purpose for which the Government intends to use this evidence and the reason the evidence is permitted under the Rule. Fed. R. Evid. 404(b)(3)(B)-(C). The Court's Order on Discovery and Scheduling, filed on April 17, 2019 [Doc. 6 at ¶ I][1], explains "reasonable notice" under Rule 404(b) is to be seven (7) calendar days before trial unless the Court orders otherwise. Here, Defendant has failed to provide a compelling need for earlier disclosure. Therefore, the Court finds no reason to disturb the seven-day time frame, as previously provided in the Order on Discovery and Scheduling [Doc. 6] exists.

Defendant also requests an off-the-record, jury-out hearing before the introduction of any Rule 404(b) evidence to determine whether the probative value of this evidence substantially outweighs its prejudicial effect. The Government submits that it is not aware of any 404(b) evidence at this time. If the Government learns of any 404(b) evidence, it will be required to provide notice before trial. Defendant's request for a pretrial hearing is more properly made to the District Judge, if any 404(b) evidence will be at issue in this case.

Accordingly, Defendant's Motion for Pretrial Notice of Government's Intent to Use Rule 404(b) Evidence [**Doc. 15**] is **DENIED**, with the issue of the need for a jury-out hearing being subject to renewal with the District Judge at or before trial.

---

[1] The Court notes the directions on the scope and timing of discovery, provided by the Order on Discovery and Scheduling, are controlling. *See, e.g.*, *United States v. Cole*, No. 3:08-CR-48, 2009 WL 596008, at *7 n.5 (E.D. Tenn. Mar. 6, 2009).

## II. WITNESS LIST [DOC. 16]

Defendant further requests the Government provide a witness list at least thirty (30) days prior to Defendant's trial date, which is set for May 4, 2021 [Doc.16]. Defendant argues that because the Government has hundreds of potential witnesses, the charges cover a time period of forty (40) months, and the law and facts of the case are abnormally complex, additional time is needed to adequately prepare a defense [Doc.16]. Defendant points out that, if granted, the provision of a witness list will not prejudice either the Government, or its witnesses, because Defendant has no history of violent behavior and does not pose a threat to any potential witness.

Conversely, the Government strongly opposes granting this motion, because such disclosure is not required by Rule 16 of the Federal Rules of Criminal Procedure, which lays out the extent of the discovery that the Government must provide [Doc. 32]. The Government cites the United States Congress's rejection of attempts to amend Rule 16 to compel disclosure of witnesses [Doc. 32]. The Government asserts that Defendant must establish a particular need for pretrial notice of its witnesses and that the need to prepare for cross-examination is not a sufficient basis to require a witness list. The Government argues that the *Powell* factors weigh against disclosure. *See United States v. Powell*, No. 12–20246, 2012 WL 6096600, *6 (E.D. Mich. Dec. 7, 2012). These factors include: (1) whether disclosure of a witness list would expedite the trial and facilitate docket control, (2) whether disclosure would cause a security issue for the witnesses, and (3) the amount of time a defendant has already had to research potential witnesses and prepare for investigation. Another consideration is whether the Government previously turned over information with the identities of the Government's witnesses. Finally, while the Government agrees to provide the required Jencks Act material the Friday before trial, it argues that Defendant

4

has possessed the discovery for long enough to identify witnesses, because the discovery is clearly organized.[2]

Generally, the Court will not require the government to disclose the names of its witnesses before trial. *See United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir.), *cert. denied*, 510 U.S. 903 (1993); *United States v. McCullah*, 745 F.2d 350, 353 (6th Cir. 1984); *see also United States v. Turner*, 91 F. App'x 489, 491 (6th Cir. 2004) (holding a "defendant in a non-capital case. . . is not entitled to know in advance of trial who will testify for the government"). *But see Roviaro v. United States*, 353 U.S. 53, 60–64 (1957) (holding that the informer's privilege does not prevent the disclosure of the identity of active participants in the crime). Nonetheless, this general rule is limited by the Government's *Brady* obligations to provide Defendant with information that is favorable to his defense and material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). If it fails to provide *Brady* materials in a timely fashion, the Government "acts at its own peril." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

Even so, the Court has discretion to order the Government to produce a witness list, pursuant to its inherent powers. *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980); *Presser*, 844 F.2d at 1285 n.12 (observing that "a trial court may have some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires it"); *see also Powell*, 2012 WL 6096600, at *6 (observing that the district court has discretion to order the government to produce a witness list).

> As a general matter, courts weigh the interests of a defendant in receiving the witness list against the government's countervailing interest in keeping the witness information undisclosed. In balancing these interests, courts have considered the following factors: (i) whether disclosure of the witness list would expedite trial and facilitate docket control, *see United States v. Jackson*, 508 F.2d

---

[2] Defendant disputes that the discovery is well organized.

5

1001, 1007 (7th Cir. 1975); (ii) whether disclosure would cause a security issue for the government witnesses, *see United States v. Watson*, 787 F.Supp.2d 667, 674–675 (E.D. Mich. 2011); (iii) the amount of time the defendant already had to research potential witnesses and prepare for investigation, *see United States v. Williams*, No. 06–CR–20411, 2010 WL 272082, at *2 (E.D. Mich. Jan. 15, 2010); and (iv) whether the government previously turned over information with the identities of government witnesses. *See Watson*, 787 F. Supp. 2d at 674.

*Powell*, 2012 WL 6096600, at *6. When considering the present matter, the Court finds that it should exercise its discretion to order parties to disclose their witnesses significantly in advance of trial only in the rare and unusual case. Here, we have no such case. Instead, the Court finds the factors enumerated in *Powell* do not weigh in favor of disclosure, even under the somewhat unique circumstances of this case.

*Powell*'s first factor examines whether disclosure of the Government's witnesses would expedite the trial. The Court's Order on Discovery and Scheduling [Doc. 6, ¶O] encourages the Government to disclose Jencks Act materials pretrial in order to avoid trial interruptions. In its response, the Government expresses its intention to provide Defendant with Jencks Act materials on the Friday before the trial is scheduled to begin [Doc. 32]. The charges against Defendant Newman cover a significant amount of time, and he expresses his concerns about the number of potential witnesses that may testify against him. However, the Court finds that disclosure of Jencks Act materials the Friday before trial would give Defendant enough time to prepare, based upon its findings on the remaining *Powell* factors, particularly the total length of time Defendant will have had to prepare for trial.

The second *Powell* factor examines the potential for security issues for the Government's witnesses, if their identities are disclosed pretrial. Defendant asserts that he has no criminal history and presents no danger to witnesses. The Government argues that "[c]oncerns

over witness intimidation and safety exist … and the defendant has given no justification for needing the [witness list] 30 days in advance of trial." [Doc. 84, p. 5]. It contends that "pill-seeking patients" are particularly vulnerable to intimidation [Doc. 84, p.6]. Based on his lack of criminal history, Defendant Newman presents no apparent danger to the Government's witnesses. However, the Government raises legitimate, if non-specific, concerns. Thus, the Court finds this factor does not favor either party.

The Court finds that the remaining *Powell* factors—the amount of time a defendant has had to prepare and whether the witnesses' identities can be gleaned from the Government's disclosures—also weigh against providing a witness list. At the motion hearing, the Government argued that this case involves a smaller pain management clinic and narrower charges than other pain clinic cases to which Defendant cited.[3] The Government further asserts that by Defendant's trial date, Defendant will have had nearly two years, from the Indictment on April 16, 2019, to the May 4, 2021 trial date, to prepare for trial with assistance of counsel. The Court agrees with the Government on these two arguments.

The Court finds Defendant Newman already knows the names of potential Government witnesses who were either patients of or employed by the pain clinic at issue in this case. Defendant argues that he does not know which of the over 950 patients the Government will call at trial. However, as the Government points out in its supplemental brief, Defendant knows which patient files were reviewed by the Government's expert. Defendant also knows the identity of the Government's confidential informant. Thus, the Court finds that Defendant Newman can

---

[3] The Court also notes that in the pain clinic case mentioned by Defendant, *United States v. Sylvia Hofstetter, et. al*, No. 3:15-CR-27, the Government agreed to disclose the Jencks Act materials thirty days in advance of trial.

7

anticipate many, if not most, of the Government's witnesses from his knowledge of the pain management clinic and the Government's disclosures.

The fact that a case involves large pool of potential witnesses alone is not a basis for a witness list. While this case may involve large numbers of patient records, due to the number of patients who could be potentially called as witnesses, a witness list is rarely a proper remedy. After weighing the *Powell* factors in light of the circumstances in this case, the Court finds it would be inappropriate to exercise its discretion to order the disclosure of a witness list in advance of trial. Consequently, Defendant's Motion for List of Government Witnesses [**Doc. 16**] is **DENIED**.

## III. EVIDENCE TO BE USED IN GOVERNMENT'S CASE-IN-CHIEF [DOC. 17]

Defendant also moves for the Court to order the Government to specifically identify the discovery it intends to use as evidence during its case-in-chief [Doc. 17]. Defendant contends the discovery includes more than 77,000 files, or approximately fifty-five gigabytes of data [Doc. 17].[4] Defendant asserts the discovery is voluminous and poorly organized and labeled. Defendant argues that fundamental fairness requires specific designation of items the Government intends to use in its case-in-chief.

In response, the Government insists Defendant's motion be denied because specific designation of its evidence is not required by the Federal Rule of Criminal Procedure 16, which governs the provision of discovery [Doc. 32]. As with its argument against providing a complete witness list, the Government also states Defendant must establish a particular need for this notice.

---

[4] At the time he filed his motion in January 2020, Defendant anticipated receiving two additional terabytes of discovery.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the government to allow a defendant to "inspect and copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, copies or portions of any of these items" if the government has custody or control over the item and the item falls within one of the following three categories:

> (i)      the item is material to preparing the defense;
>
> (ii)     the government intends to use the item in its case-in-chief at trial; or
>
> (iii)    the item was obtained from or belongs to the defendant.

In the present case, the Government provided voluminous discovery falling into one or more of these categories. Defendant asks the Court to order the Government to designate that subset of evidence provided in discovery that falls within the second of these categories, the evidence the Government intends to use in its case-in-chief. He argues the universe of potential evidence that he must be prepared to face at trial is so huge that counsel cannot hope to prepare to meet it adequately and effectively.[5]

Despite the Court's concerns over the sheer volume of discovery in this case, which includes hundreds of patient files, the Court acknowledges specific designation of the evidence that the Government will use in its case-in-chief at trial is not required by Rule 16 or case law. Our appellate court has expressly held "[t]he discovery afforded by Rule 16 is limited to the

---

[5] This motion is not about whether the Government has complied with its discovery obligations, as the Court assumes it has. Nor is it about whether defense counsel should have to review all of the discovery before trial in order to provide the effective assistance of counsel. The Court assumes that defense counsel will have reviewed all discovery pertinent to their client prior to trial. The issue before the Court is whether the Government should have to designate that part of the total discovery that it will offer at trial, so that Defendant can be prepared to address those patient files, witnesses, etc., in greater detail or with more specificity than they could realistically employ if they had to be prepared to address all of discovery.

evidence referred to in its express provisions."[6] *Presser*, 844 F.2d at 1285. Neither Rule 16 nor the Due Process clause of the Fifth Amendment requires the Government to designate the discovery that relates to a particular defendant or count of an indictment. *United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010) (rejecting arguments that the government direct a defendant to exculpatory evidence within the total discovery provided). Even when discovery is voluminous, the Government has no duty to isolate the particular items or documents that are relevant to each count of an indictment. *See United States v. Richards*, 659 F.3d 527, 543-44 (6th Cir. 2011), *cert. denied*, 566 U.S. 1043 (2012). While Rule 16 provides what should be disclosed, it does not speak to the form that the disclosure should take. *See Warshak*, 631 F.3d at 296 (observing that Fed. R. Crim. P. 16 does not require that discovery be indexed or organized in a specific way).

       The Court further observes that, in asking for the Government to designate evidence it will use to prove its case at trial, Defendant is to some extent impinging upon the Government's work product. *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986) (holding attorney work product is ordinarily protected from discovery by the opposing party); *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 660 n.6 (6th Cir. 1976) (holding the "work product doctrine clearly applies to the work produced by government attorneys in anticipation of litigation"), *cert. denied*, 430 U.S. 945 (1977); *see also* Fed. R. Crim. P. 16(a)(2) (providing the government is not required to disclose "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or

---

[6] Despite the limited nature of Rule 16, the government must provide a defendant with information that is favorable to his defense and material to either guilt or punishment, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The government "acts at its own peril" if it fails to provide Brady materials in a timely fashion. *Presser*, 844 F.2d at 1281.

prosecuting the case*"); United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993) (holding a bill of particulars is not a means to discover the government's evidence and trial theories).

Finally, pursuant to its inherent powers, the Court has discretion to order the Government to produce discovery not required by Federal Rule of Criminal Procedure 16. *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980) (holding that the district court has the discretion to order the prosecution to produce a witness list); *Presser*, 844 F.2d at 1285 n.12 (observing that "a trial court may have some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires it"); *see also Richards*, 659 F.3d at 543 (maintaining that it is within the court's discretion and inherent powers to regulate discovery); *Rhodes v. McDaniel*, 945 F.2d 117, 119 (6th Cir. 1991) (observing that "[t]he district court has broad discretion in regulating discovery"), *cert. denied*, 502 U.S. 1032 (1992).

In his supporting memorandum [Doc. 18], Defendant directs the Court to other cases, in which the courts required the government to specify some evidence that it would use at trial. *See United States v. Hill*, No. 3-92-132, 1993 WL 21758, at *3 (E.D. Tenn. January 27, 1993); *United States v. Laughlin*, 768 F. Supp. 957 (N.D.N.Y. 1991); *United States v Poindexter*, 727 F. Supp. 1470 (U.S.D.C. 1989); and *United States v. Turkish*, 458 F. Supp. 874 (S.D.N.Y. 1978). However, unlike in the present case, each of the preceding cases occurred when technological capabilities to examine larger amounts of data were substantially inadequate. Additionally, the nature of the charges in most of the cases cited by Defendant are much broader than the instant charges. *See Poindexter*, 727 F. Supp. at 1473 (involving the President's National Security Advisor breaching national security by obstructing a Congressional investigation of the Iran-Contra activities); *see Laughlin*, 768 F. Supp. at 959 (defendant's charges featured years of harmful storing and disposing of hazardous wastes); and *see Turkish*, 458 F. Supp. at 884

11

(defendants were charged with conspiracy to defraud the United States in the crude oil market). Here, Defendant's Indictment involves conspiracy to distribute Schedule II and V narcotic substances over a thirty-nine-month period [Doc. 1]. Finally, both the defendants' requested discovery designation and the designation ordered by the courts in the cited cases cover a much narrower scope, as opposed to all discovery the Government intends to use as evidence during its case-in-chief. *See Turkish*, 458 F. Supp. at 881 (ordering the government to disclose only its witness list to better identify relevant information from 25,000 pieces of non-electronic data); *see also Poindexter*, 727 F. Supp. at 1472 (ordering the government to produce documents tending to prove he had reason to believe his actions were lawful, but denying all other discovery requests). Presently, Defendant seeks designation of all the evidence the Government will introduce.

The Court finds Defendant's need for specific designation has significantly diminished since Defendant first filed his motion in January. The trial of this case has been continued to May 4, 2021, giving Defendant Newman nearly two years to prepare from the time the Indictment was issued. Thus, the Court finds the period of time Defendant has had to review the effectively ameliorates the need for specific designation of the evidence the Government intends to use at trial. Accordingly, Defendant's Motion for Designation of Specific Evidence [**Doc. 17**] is **DENIED**.

## IV.     EXISTENCE OF CONSPIRACY [DOC. 19]

Defendant also moves for a hearing to determine the existence of a conspiracy, pursuant to *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978); *Bourjaily v. United States*, 483 U.S. 171, 180 (1987); *United States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917 (1979); and *United States v. Vinson*, 606 F.2d 149, 152–53 (6th Cir. 1979). Defendant argues the Government must prove the conspiracy existed before it may introduce coconspirator statements

12

at trial in its case-in-chief [Doc. 19]. Alternatively, Defendant requests the Government provide a pretrial written offer of proof on the admissibility of coconspirator statements. At this time, defense counsel does not believe the evidence reveals a conspiracy involving Defendant and is unsure whether alleged coconspirator statements will come only from Dr. Steven Mynatt or if such statements may come from uncharged conspirators, such as employees or patients [Doc. 19]. For this reason, Defendant argues the most efficient practice, with the least potential for a confrontation clause violation, is a pretrial hearing on the matter [Doc. 19].

Conversely, the Government's position is that the most efficient and economic option is to permit it to introduce the coconspirator statements, subject to it proving the existence of the conspiracy by the end of its case-in-chief. The Government contends this practice has not historically created problems or mistrials. Alternatively, the Government argues that if the Court is inclined to have a hearing, Defendant should be required to identify the specific statements to which he objects [Doc. 33].

The Federal Rules of Evidence require that for a coconspirator statement to be admissible non-hearsay, the alleged coconspirator statement must be "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The Sixth Circuit has approved three procedures for resolving these statements' admissibility: (1) holding a pretrial hearing, (2) requiring the Government to present at trial evidence of the conspiracy before presenting the coconspirator's statement, and (3) allowing the Government to present the statement before proving the conspiracy at trial but instructing the jury that the Government must prove the conspiracy before it can consider the statement. *Vinson*, 606 F.2d at 152–53 (6th Cir. 1979) (citing *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978)). Defendant prefers the first of these options, a pretrial hearing.

13

Defendant argues that a pretrial hearing is the most efficient way to protect his right to due process and to confront the witnesses against him [Doc. 25]. While the Sixth Circuit has observed that pretrial hearings may be "burdensome, time-consuming and uneconomic," *Vinson*, 606 F.2d at 152 (footnote omitted), "a trial judge, in the exercise of his discretion, may choose to order the proof in this manner if the circumstances warrant." *Id.* The decision of which of the three *Vinson* options to use falls squarely within the district judge's sound discretion. *United States v. Robinson*, 390 F.3d 853, 867 (6th Cir. 2004) (stating the decision is "the trial court's prerogative"). The Court observes that it is the historical practice in this District to use the third of the three options, which the Court will refer to as the provisional admission option. A change from the provisional admission option, historically employed in this District, is not warranted when the proponents of the pretrial hearing offer only "general and vague objections" that "demonstrate no specific prejudice" resulting from the use of the provisional admission option. *United States v. Martin*, No. 3:07-CR-51, 2008 WL 152900, at *3 (E.D. Tenn. Jan. 14, 2008).

Here, the third of the approved procedures for resolving the admissibility of alleged coconspirator statements is appropriate under the circumstances. To veer from this preference, Defendant must raise a strong reason. *Id.* However, Defendant has failed to do so, despite his concern with confrontation. The Federal Rules specifically permit the Government to introduce the coconspirator statements without first calling the coconspirator and presenting subsequent evidence of the conspiracy. Fed. R. Evid. 801(d)(2)(E). Thus, this is not a prejudice specific to this case. With regard to Defendant's argument that there is no evidence of a conspiracy, the Government will have to prove this conspiracy at trial, which should ameliorate Defendant's Sixth Amendment Confrontation Clause concerns. The Court finds Defendant's objections to the

14

provisional admission option are not unique or specific to this case.  Accordingly, Defendant's Motion for Hearing to Determine Existence of Conspiracy [**Doc. 19**] is **DENIED**.

## V.        BILL OF PARTICULARS [DOC. 20]

Defendant  moves the Court to order the Government to provide a bill of particulars, specifying the following: (1) the logistics of the alleged conspiracy and Defendant's role in such, (2) how Defendant breached the necessary standard of care, (3) the ultimate goal of the conspiracy, (4) how Defendant's conduct furthered this goal, and (5) which prescriptions, issued to patients, were outside of the usual course of professional practice and not for a legitimate medical purpose [Doc. 20].  He argues that a bill of particulars is necessary for preparing a defense, preventing surprise at trial, and defining the crime to protect against later prosecution for the same offense. He contends that neither the indictment, nor the discovery, inform Defendant of his precise role in the alleged conspiracy [Doc. 26].

At the July 13 hearing, defense counsel stated that in the six months after filing the motion, Defendant has received some answers but is still seeking particularization of the patients to which Defendant supposedly issued illegitimate prescriptions.  Defendant contends that there are 954 patient files in this case.  He contends that even though he did not personally see any of these patients, he is charged with conspiracy because of his supervisorial role as medical director at the clinic.  While Defendant acknowledges the Government will not call all 954 patients as witnesses at trial, because there are 954 witness options, Defendant must prepare for any of them to be called. Defense counsel noted they are ill-equipped to prepare for such a large amount of data. Accordingly, Defendant Newman asks the Court to require a bill of particulars specifying which prescriptions it contends were issued outside of the scope of ordinary practice or without legitimate medical purpose to allow Defendant to prepare.  Defense counsel asserts that this case

involves a "bare bones" Indictment and the Government declines to narrow potential witnesses. Therefore, he maintains specification of prescriptions is necessary to ensure a fair trial.

The Government disagrees and maintains that both the Indictment and discovery adequately notify Defendant of the allegations against him [Doc. 30]. Further, it contends that its expert disclosures reveal the particular prescriptions for particular patients that are at issue and the patient files reviewed by its medical experts. It asserts that Defendant is not entitled to additional particularization. The Government argues Defendant is simply using this request for a bill of particulars to learn the Government's case theory and proof, and granting this motion would allow Defendant to go around the limits of the Federal Rules of Criminal Procedure 16, as well as *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972). Additionally, the Government agrees to timely provide Defendant with both Jencks Act materials and an exhibit list the Friday before trial.

"The function of a bill of particulars is to minimize surprise and assist the defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir.2004) (alterations and quotation marks omitted). A bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Id.* (citing *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993)). As discussed in section III above, a general requirement that the government hand over before trial a list of all coconspirators, informants, or prospective trial witnesses does not exist. *See United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991); *United States v. Perkins*, 994 F.2d 1184, 1189-91 (6th Cir. 1993); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Moreover, "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." *United States v. Paulino*, 935

F.2d 739, 750 (6th Cir.1991), *superseded on other grounds*, *United States v. Caseslorente*, 220 F.3d 727 (6th Cir.2000).

Here, the Indictment tracks the language of the pertinent statutes and sufficiently puts Defendant on notice of the charges he faces. Defendant seeks particularization of all of the prescriptions the Government contends were provided outside the scope of professional practice and without a legitimate medical purpose. A bill of particulars is not the appropriate vehicle for such information. Further, the Government's previous disclosure of its expert reports provides Defendant information on at least some of the particular prescriptions are at issue. Defendant already has all the prescriptions and all the patient files given to him in discovery. Defendant wants to know the Government's theory of the case, including which specific prescriptions it alleges are illegitimate. This is an inappropriate purpose for a bill of particulars. *See Salisbury*, 983 F.2d at 1375 (holding a bill of particulars is not a means to discover the government's evidence and trial theories). Accordingly, Defendant's Motion for a Bill of Particulars [**Doc. 20**] is **DENIED**.

## VI. DISCLOSURE OF IMPEACHING INFORMATION [DOC. 21]

Defendant requests that the Government produce any *Brady* material and impeachment evidence in its possession at least thirty (30) days in advance of trial [Doc. 21]. This includes: (1) information on agreements not to prosecute or offers of lesser sentences, for individuals, their relatives, or any other form of payment; (2) threat of prosecution or intimidation by any government agency or agent; (3) plea agreements prior inconsistent statements, convictions, prior misconduct or bad acts, evidence of drug use on part of government witnesses; (4) prior testimony of informants, co-conspirators, or experts; (5) information tending to cast doubt

on the witnesses' credibility; and (6) whether the witness was ever the potential target of the investigation.

The Government's position is that it will provide all of the requested material, to the extent that it exists, but that it is not required to provide the requested material thirty days before trial [Doc. 31]. The Government states that it will provide the required *Brady* material as soon as it becomes aware of any. It contends that it will provide *Jencks* and impeachment material to defense counsel the Friday before trial.

The Sixth Circuit has determined there is no constitutional right to pretrial disclosure of discovery in criminal cases, notwithstanding the holding in *Brady*. *Presser*, 844 F.2d at 1275. Instead, the discovery to which a defendant is entitled is limited to that set out in Federal Rule of Criminal Procedure 16. *Id.* As the Government notes in its response, *Brady* requires the Government to turn over evidence in its possession that is both (1) favorable to the accused and (2) material to guilt or punishment. *Presser*, 844 F.2d at 1281 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)); *see also United States v. Davis*, No. 3:11-CR-142, 2012 WL 928344, at *6 (E.D. Tenn. Mar. 19, 2012) (holding witness impeachment evidence falls within the scope of the disclosure obligations of Rule 16 of the Federal Rules of Criminal Procedure). In light of Court's Order on Discovery and Scheduling [Doc. 6, ¶E], which provides when the Government must disclose *Brady* material and impeachment evidence, this motion is denied. The Court has already ordered this disclosure, and Defendant has failed to demonstrate a compelling need for disclosure earlier than what the Government offers.[7] As such, Defendant's Motion for Disclosure of Specific Items Impeaching Information [**Doc. 21**] is **DENIED**.

---

[7] Disclosures relating to the confidential informant will be discussed separately in relation to Defendant's Motion for Disclosure of the Identity and Location of Cooperating Individuals [Doc. 22].

## VII.    DISCLOSURE OF COOPERATING INDIVIDUALS [DOC. 22]

Pursuant to *Roviaro v. United States*, 353 U.S. 53, 60–64 (1957), Defendant requests that the Government be required to provide the names, addresses, and present locations of any informants or cooperating individuals who are material witnesses [Doc. 22]. Along with this request, Defendant asks the Court to order the Government to provide the following impeachment material for cooperating individuals: (1) whether such individual was suspected apprehended, or convicted of any crimes and the nature of the crimes; (2) whether any potential or actual criminal charges were abandoned or disposed of upon agreement to gather information for the Government and any promises of consideration given to the individual; (3) financial arrangements and payments, including documentation thereof; (4) the substances of any plea bargains; (5) information tending to show bias or prejudice on the part of any cooperating individual; (6) any contradictory or inconsistent statements relative to this case or any related case; (7) mental health or substance abuse issues, past cooperation, summary of the informant files from either Federal Bureau of Investigation, Tennessee Bureau of Investigation, or the Drug Enforcement Administration, as well as all federal tax returns; (8) documentation of cooperation in the investigation; (9) dates in which the individual was "opened" or "closed" as a governmental informant; (10) instructions given to all cooperating individuals; (11) any authorization for a cooperating individual to engage in a crime; (12) whether any informants made use of their affiliation with any organizations and the name of the organization; and (13) any past testimony of cooperating witnesses.

Defendant seeks the identity and address of confidential informants who were specifically present for, or participated in, the alleged conduct, for these informants may have knowledge of facts bearing on guilt or innocence [Doc. 27]. If such informants exist, Defendant

contends the Government must disclose their identities, if the informant takes a material part in the transaction and the identity is helpful to the defense. Here, Defendant asserts that the Government used one, or more, confidential informants who were involved in both management at the pain clinic, as well as day-to-day activities of the pain clinic. He maintains that the confidential informant had contact with patients, entered patient information into charts, consulted with doctors on patient care, and made decisions regarding whether patients should be discharged from the practice. [Doc. 27]. Defendant argues that these acts reveal the confidential informant took part in illegal activity at the pain clinic [Doc. 27]. For these reasons, Defendant believes the confidential informant's information is material to the preparation of his defense, which includes an entrapment defense [Doc. 27].

At the July 13 hearing, the parties acknowledged that the defense knows the identity of the confidential informant. Defense counsel argued that the confidential informant has been a cooperating source in other cases for the Government and, consequently, he needs to be able to verify the informant's track record and confirm whether this information is corroborated by other cases. Defendant asserted that once the requested information on the confidential informant is received, extensive investigation into this matter will be needed. He argues that the need to conduct an extensive investigation justifies receiving this information thirty (30) days prior to trial.

In his supplemental brief [Doc. 83], Defendant relies on *United States v. Dexta,* to argue that "[d]isclosure has usually been required where the informant was an active participant in the events underlying the defendant's potential criminal liability," and that "[d]isclosure has usually been denied where the informant was not a participant, but a mere tipster or introducer." 136 F. App'x 895, 905 (6th Cir. 2005) (citing *United States v. Sharp*, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985)). Defendant further asserts that the informant in this case was an active and integral

participant in the events at issue before the Court. Therefore, he contends that providing the informant's information at least thirty (30) days before trial is necessary for him to conduct an appropriate investigation prior to trial.

The Government responds that Defendant has "no right to early access to the confidential source information at issue in this case, and the Court should not create one" [Doc. 84]. It contends that the confidential informant's identity is privileged [Doc. 28], and Defendant already knows the identity of the confidential informant because the informant was an employee at the pain clinic. Thus, the Government contends that Defendant Newman is really asking for *Jencks* and impeachment material, which the Government says it will timely provide shortly before trial [Doc. 28]. Furthermore, the Government has already provided any *Brady* material of which it is aware and some summaries of statements of potential witnesses [Doc. 28].

The Government also expresses that, as a general rule, it does not want to reveal information on confidential informants due to "concerns over witness intimidation," concerns for witness safety, and because "the defendant has given no justification for needing the information 30 days in advance of trial." [Doc. 84]. It argues that Defendant bears the burden of showing that the identity of the confidential informant is essential to his defense, but here Defendant has failed to carry this burden. For the reasons stated above, the Government argues it should also not be required to disclose this information even ten (10) days before trial.

In *Roviaro*, the Supreme Court stated that the Government possesses a limited privilege to "withhold from disclosure the *identity* of persons who furnish information of violations of law to officers charged with enforcement of that law." 353 U.S. at 59 (emphasis added). But "[w]here the disclosure of an informer's identity, or of the contents of his communications, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause,

the privilege must give way." *Id.* at 60–61. *Roviaro* did not permit, or even discuss, the disclosure of information beyond the informant's identity and statements that would tend to reveal the informant's identity. *Id.* at 627. Here, Defendant Newman already knows the identity of the confidential informant. Litigation of Defendant's suppression motion revealed that the Government had also disclosed the informant's conversations with Defendant, which the informant had recorded. Defendant has already received all the information to which the exception to the informer's privilege discussed in *Roviaro* would arguably require the Government to disclosure.

The Court finds the information about the confidential informant that Defendant seeks is in the nature of impeachment material. As discussed in parts II and VI above, the case law does not permit early disclosure of Jencks Act materials, nor does it require early disclosure of impeaching materials. *See, e.g., United States v. Briseno*, No. 2:11-CR-77, 2014 WL 12682288, at *2 (N.D. Ind. Feb. 21, 2014). Therefore, Defendant's Motion for Disclosure of the Identity and Location of Cooperating Individuals [**Doc. 22**] is **DENIED.**

## VIII. INCRIMINATING STATEMENTS MADE BY DEFENDANT [DOC. 23]

Pursuant to the Fifth Amendment of the United States Constitution, Defendant asked the Court to suppress all self-made statements gained by the Government's confidential informant after March 4, 2019. At the July 13, 2020 motion hearing, defense counsel orally moved to withdraw this motion, explaining the Government provided information that makes this motion no longer sustainable. Defendant's oral motion to withdraw this motion is **GRANTED**, and his motion to suppress all Defendant's statements obtained in violation of the right against self-incrimination [**Doc. 23**] is **WITHDRAWN**.

## IX. CONCLUSION

Based upon the filings and arguments of the parties, the case law, and the particular circumstances of this case, the Court **ORDERS** as follows:

(1) The Motion for Pretrial Notice of Government's Intent to Use 404(b) Evidence [**Doc. 15**] is **DENIED**, with the request for a jury-out hearing subject to renewal with the District Judge at or before trial;

(2) Motion for a Witness List [**Doc. 16**] is **DENIED**;

(3) Motion for Designation of Specific Evidence the Government Intends to Use in its Case-In-Chief [**Doc. 17**] is **DENIED**;

(4) Motion for Hearing to Determine Existence of Conspiracy [Doc. [**Doc. 19**], is **DENIED**;

(5) Motion for Bill of Particulars [**Doc. 20**] is **DENIED**;

(6) First Specific Motion for Disclosure Items of Impeaching Information **[Doc. 21] is DENIED**;

(7) Motion for Disclosure of the Identity and Location of Cooperating Individuals [**Doc. 22**] is **DENIED**; and

(8) Defendant's oral motion to withdraw his motion to suppress statements is **GRANTED**, and his Motion to Suppress All Statements by Defendant Obtained in Violation of the Right Against Self Incrimination under U.S. Const. Amend V [**Doc. 23**] is **WITHDRAWN**.

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

23