UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,                )
                                         )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )        No.: 3:19-CR-59-TAV-DCP
                                         )
DAVID NEWMAN,                            )
                                         )
        Defendant.                       )

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Defendant's Motion to Exclude Medical Opinion [Doc. 39] and Motion to Exclude Expert Testimony [Doc. 41], both filed on March 9, 2020. Defendant Newman asks the Court to exclude the testimony of two Government experts, Dr. Timothy Munzing and Drug Enforcement Administration ("DEA") Diversion Investigator Merry Church. He argues that neither are qualified to provide expert testimony in this case. Defendant also challenges the relevance and reliability of Dr. Munzing's testimony and the relevance of Investigator Church's testimony. Finally, he contends that the proposed expert testimony of both infringes on the jury's role. The parties appeared before the undersigned on February 17, 2021, for a telephonic motion hearing on these motions. Assistant United States Attorneys Anne-Marie Svolto and Louis Manzo appeared telephonically on behalf of the Government. Attorneys Robert R. Kurtz and Wesley D. Stone appeared by telephone on behalf of Defendant Newman, who was excused from the hearing.

For the reasons discussed herein, the Court finds no basis to exclude the proposed expert testimony of Dr. Munzing. Additionally, the Court finds that Investigator Church will testify primarily as a fact witness but may testify about the characteristics or red flags indicating diversion of controlled substances based on her training and experience as a DEA diversion investigator. Agent Church is prohibited from making conclusions or drawing comparisons about the practices at Tennessee Valley Pain Specialists, the pain clinic at issue in this case.

I.      BACKGROUND

Defendant Newman is charged [Doc. 1] with conspiring with Steven Mynatt[1] and unnamed others to knowingly, intentionally, and without authority distribute and dispense or cause to be distributed or dispensed controlled substances "outside the usual course of professional practice and not for a legitimate medical purpose," in violation of 21 U.S.C. §§ 841(a)(1) & -(b)(1)(c) & 846. Both Defendants Newman and Mynatt are medical doctors and the Indictment charges that they illegally distributed the following controlled substances: "hydrocodone, oxycodone, hydromorphone, oxymorphone, morphine (Schedule II controlled substances), and gabapentin (a Schedule V controlled substance)" [Doc. 1]. This charge arises out of the Defendants' work at Tennessee Valley Pain Specialists ("TVPS").

At a hearing on a motion to suppress evidence on July 13, 2020, Defendant Newman and the Government stipulated to the following facts: Drs. Newman and Mynatt were co-owners of TVPS. Defendant Newman was the Medical Director at TVSP. As Medical Director, Defendant Newman set the policies and procedures for TVPS, managed the employees at TVPS, worked onsite one day each week, and had a duty to maintain the patient files at TVPS for ten years [*see*

_____

[1]Defendant Mynatt is also charged [Doc. 1] with two counts of distributing controlled substances without a legitimate medical purpose and outside the course of professional practice. Defendant Mynatt entered into a plea agreement [Doc. 36] and is no longer proceeding to trial.

Doc. 77, p.6]. In relation to the suppression motion, the Government argued that only Dr. Mynatt examined the patients at TVPS [*see* Doc. 77, pp.13-14].

The Government disclosed its intent to use the expert testimony of Dr. Timothy A. Munzing at trial. Dr. Munzing is board certified in family medicine and has worked as a family physician for over thirty years [Doc. 40-1, p.6].[2] Additionally, Dr. Munzing is a professor at two medical schools and has served as a Medical Expert Reviewer for a California agency, the DEA, Federal Bureau of Investigation, and Department of Justice [Doc. 40-1, p.6]. He has served as an expert in around eighty (80) criminal cases involving the overprescribing of opioids or other drugs [Doc. 40-1, p.6]. Dr. Munzing examined the files of and provides an opinion on the medical care and prescriptions for nine of Dr. Mynatt's TVPS patients [Doc. 40-1, p.3].

The Government also disclosed its intent to use the testimony of DEA Diversion Investigator Merry Church. Investigator Church has worked for the DEA for ten years and has served as a diversion investigator for four years [Doc. 51, p.1-2, n.1].[3] She received three months of DEA training and has participated in approximately one hundred (100) investigations into the diversion of controlled substances [Doc. 51, p.2, n.1]. Investigator Church will provide testimony on the following facts: the structure of the Controlled Substances Act ("CSA"), how drugs are assigned to schedules in the CSA, that medical professionals must obtain a DEA license to proscribe drugs in schedules II-V, and that licensed medical professionals can only prescribe drugs within a professional practice and for a legitimate medical purpose [Doc. 51, p.2]. Investigator Church will also testify about the licensure status of the Defendants, the documents that medical professionals must complete to maintain their DEA licenses, and the schedule of controlled

---

[2] Defendant attached Dr. Munzing's report to his motion [Doc. 40-1].

[3] Information about Investigator Church is taken from the Government's response [Doc. 51].

3

substances prescribed at TVPS [Doc. 51, p.2]. In its response, the Government states that Investigator Church will not offer any opinions but that it disclosed her as a potential expert to avoid any objections to her testimony during the trial [Doc. 51, p.1]. At the February 17, 2021 motion hearing, the Government stated that Investigator Church will also testify about the origins of the investigation of TVPS and "red flags" or indicators of drug diversion.

## II.      POSITIONS OF THE PARTIES

Defendant Newman asks the Court to exclude the expert testimony of Dr. Munzing. He argues that Dr. Munzing is not qualified to provide an expert opinion on the standard of care for pain management specialists like Defendant Newman [Docs. 39 & 40]. Defendant argues that he acted only as Medical Director at TVPS and did not write any prescriptions or treat any patients. He contends that Dr. Munzing is certified in family medicine, not pain management, and has never been a medical director at a pain management clinic. Thus, Defendant maintains that Dr. Munzing is not qualified to testify about the duties or standard of care for a medical director at a pain management clinic.

Defendant also argues that Dr. Munzing's opinions regarding Dr. Mynatt's prescribing practices are not reliable or relevant and infringe upon the province of the jury. He contends that Dr. Munzing's opinions are not reliable because they are based on an unrepresentative and non-random sample of Dr. Mynatt's patients. He asserts that Dr. Munzing's opinions about Dr. Mynatt's prescribing practices are not relevant to whether Defendant Newman conspired to distribute controlled substances as a drug dealer, rather than a medical professional. Finally, Defendant Newman argues that even if Dr. Munzing is qualified and his testimony is reliable and relevant, it is still inadmissible, because its minimal probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

The Government responds that Dr. Munzing is qualified to offer expert testimony consistent with his report [Doc. 50]. It contends that Dr. Munzing will not testify about medical directors at pain management clinics but, instead, will provide an opinion on the prescribing practices of Dr. Mynatt. The Government also asserts that Dr. Munzing's testimony is reliable, because he will be testifying about the patient care afforded to the specific patients whose files he reviewed and that he will not extrapolate to the clinic as a whole. It maintains that Dr. Munzing's testimony is relevant to a key issue at trial, whether the prescriptions at TVPS were outside of professional practice and for a legitimate medical purpose. The Government argues that Dr. Munzing's testimony is highly probative to the legality of Dr. Mynatt's prescriptions, which is a central issue in this case.

Defendant also argues that Investigator Church is not qualified to testify on proper medical treatment or that TVPS patient files included red flags that are inconsistent with legitimate medical treatment [Docs. 41 & 42]. He contends that Investigator Church's proposed testimony is not relevant to treating patients outside of professional practice or without a legitimate medical purpose or to any issue in this case. Finally, Defendant argues that if the Court finds Investigator Church's testimony to have some relevance, her testimony is substantially more unfairly prejudicial than it is probative. Specifically, Defendant Newman argues that the Court should prohibit Investigator Church from comparing characteristics of pill mills to the practices at TVPS.

The Government responds that Investigator Church will offer relevant factual testimony, not expert testimony [Doc. 51]. It contends that she will not offer opinions regarding the facts to which she testifies. It asserts that she will not give an opinion about whether Defendant Newman violated the CSA, nor will she testify about doctor shopping, pharmacy shopping, or red flags.

5

At the February 17 motion hearing, counsel for Defendant Newman said he did not object to Dr. Munzing's expert testimony, as limited to his report, and the fact-based testimony of Investigator Church. With regard to Investigator Church, the Government clarified that although much of her testimony is not expert opinion, per se, only an individual with training and experience in her field would be able to provide the testimony that she will provide. The Government asserted that Investigator Church will testify about "red flags" and indicators of diversion and about how the investigation in this case began, but she will not give her professional opinion as to whether those red flags existed at TVPS. The Government added one caveat to this statement of Investigator Church's proposed testimony, contending that if the Defendant "opened the door" by questioning the integrity of the case or stating that TVPS was unfairly targeted for investigation, then it could ask Investigator Church to testify about whether TVPS exhibits the red flags that indicate diversion. Defense counsel responded that he did not anticipate making a bad faith or improper motive argument regarding the investigation of TVPS; however, he could not fully respond to the Government's hypothetical caveat at this time.

## III. ANALYSIS

"Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 592 (1993) (citing Fed. R. Evid. 701-703). Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue,

6

(b) the testimony is based on is based upon sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. *Daubert* 509 at 589, 597. As to scientific knowledge, the court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. *Id.* at 589. In *Daubert,* the Supreme Court provided several key considerations to guide courts in their gatekeeping role: (1) Can or has the scientific knowledge been tested, (2) Has the given theory or technique been published or the subject of peer review, (3) Does a known error rate exist, and (4) Does the theory enjoy acceptance in the particular field. *Id.* at 593-94.

Although *Daubert* focused on the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Although the general principles established in *Daubert* apply to all experts, the enumerated considerations may or may not apply to a particular non-scientific expert. *Id.* at 149. The trial judge enjoys broad discretion in determining whether the factors listed in *Daubert* reasonably measure reliability in a given case. *Id.* at 153. With this framework in mind, the Court

turns to the issues surrounding the admissibility of the testimony of Dr. Munzing and Investigator Church.

### A. Expert Testimony of Dr. Timothy Munzing

In his motion [Doc. 39], Defendant Newman asks the Court to exclude the expert testimony of Dr. Munzing, arguing that he is not qualified to testify about the standard of care for and duties of a medical director at a pain management clinic and that his proposed testimony is unreliable, irrelevant, and unfairly prejudicial to an extent that overshadows its probative value. At the motion hearing, AUSA Manzo confirmed that Dr. Munzing would not be testifying to the standard of care for a medical director. Instead, he would testify about care provided by Dr. Mynatt to the nine patients whose files Dr. Munzing examined. AUSA Manzo stated that Dr. Munzing would not extrapolate from these files to the practices at TVPS, nor would he make any representations about TVPS as a whole. Mr. Kurtz agreed that this accounted for all of his objections to Dr. Munzing's testimony.

The Court finds that the parties agreed that Dr. Munzing's testimony would be limited to his report and the care provided by Dr. Mynatt to the nine patients covered by the report. The Court also finds that the parties agreed that Dr. Munzing would not extrapolate from his report to TVPS as a whole. The Court finds that Defendant Newman no longer objects to the admissibility of Dr. Munzing's proposed expert testimony. Accordingly, the Defendant's Motion to Exclude Medical Opinion [**Doc. 39**] is **DENIED as moot**. If the Government seeks to have Dr. Munzing testify to matters beyond the parameters to which it agreed at the February 17 hearing, it must move to do so in advance of eliciting the testimony and outside of the presence of the jury.

## B. Expert Testimony of DEA Diversion Investigator Merry Church

In his motion [Doc. 41], Defendant Newman asks the Court to exclude the expert testimony of Investigator Church, arguing that she is not qualified to testify as an expert about proper medical treatment or that TVPS patient files contained red flags that are inconsistent with legitimate medical treatment.  He also argues that Investigator Church's proposed testimony is irrelevant and unfairly prejudicial.  At the motion hearing, Defendant argued that Investigator Church was not qualified to testify about medical care or the legitimacy or necessity of prescriptions or medical diagnoses, about the standard of care for prescribing opioids or for a medical director of a pain management clinic, or about whether the Defendants violated the CSA.

At the February 17 motion hearing, the parties agreed that Investigator Church would primarily testify as a fact witness.  AUSA Manzo stated that Investigator Church would not give opinions on the law, how the facts apply to the law in this case, or whether the Defendants violated the law.  AUSA Svolto stated that Investigator Church would not provide an opinion on the standard of care employed by the medical professionals at TVPS.  AUSA Svolto said, instead, Investigator Church would testify about how pain clinics operate generally, the red flags that indicate diversion, and how diversion investigations begin.  AUSA Svolto said the Government would not ask Investigator Church if, in her professional opinion, TVPS had exhibited the red flags indicating diversion.

AUSA Manzo stated that the area of potential dispute between the parties is limited to Investigator Church's testimony about the red flags that indicate a diversion investigation is appropriate.  He characterized this testimony regarding the characteristics or markers that alert a diversion investigator to begin an investigation as relating to the "basic job function" of a diversion investigator.  AUSA Manzo agreed that Investigator Church would not testify about whether TVPS

exhibited the red flags indicating diversion, unless the Defendant "opened the door" to such testimony by challenging the integrity or propriety of the investigation of TVPS. Mr. Kurtz responded that AUSA Manzo's hypothetical of Defendant opening the door to Investigator Church testifying about TVPS exhibiting red flags was not clear. However, Mr. Kurtz said the defense did not anticipate arguing that the investigation began due to bad faith or an improper motive.

First, the Court finds that the parties are in agreement that Investigator Church may properly testify about the investigation of TVPS, including why the diversion investigation began, and about the structure of the CSA, scheduled drugs, and the licensing of medical providers to prescribe controlled substances. Thus, the Court will focus its analysis on whether Investigator Church may testify about "red flags" indicating diversion and the extent of that testimony. The Court finds that such testimony qualifies as expert testimony because the characteristics or factors that indicate drug diversion are based upon her "specialized knowledge" as a diversion investigator. *See* Fed. Rule Evid. 701(c) (providing that a lay witness may provide opinion testimony that is not based on specialized knowledge).

In assessing the propriety of expert testimony, the Court examines whether the expert is qualified, the testimony will help the jury determine a fact at issue, and the testimony is reliable. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517 528-29 (6th Cir. 2008), *cert. denied* 556 U.S. 1152 (2009); *United States v. Stapleton*, No. 12–11–ART–(1),(2),(4), 2013 WL 5966122, *2 (E.D. Ky Nov. 8, 2013). The party offering the expert, here the Government, must show by a preponderance of the evidence that the proposed expert testimony satisfies these requirements. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir.) (citing *Daubert*, 509 U.S. at 592 n.10), *cert. denied*, 534 U.S. 822 (2001).

The Court finds that based upon her training and experience as a diversion investigator,[4] Investigator Church is qualified to testify about the facts and circumstances, i.e., the red flags, that indicate controlled substances are being diverted.[5] "Repeated firsthand observations may provide a witness the specialized knowledge and experience he needs to testify as an expert." *Stapleton*, 2013 WL 5966122, at *3 (citing *Berry*, 25 F.3d at 1349-50). In *Stapleton*, the court found that a detective could testify about the "features drug investigators usually find in pill mills" based upon his training and fourteen years of experience in narcotics investigations. *Id.* (finding medical expertise was not necessary for testimony on the general characteristics of a pill mill). In the instant case, Investigator Church has worked as a diversion investigator for four years and participated in one hundred diversion investigations. Accordingly, while her experience is not nearly as extensive as the officer in *Stapleton*, the Court finds she is qualified to testify to the red flags indicating diversion.

---

[4] In his motion, Defendant states that the Government has not provided Investigator Church's qualifications, background, training, or experience [Doc. 42, p.4]. In its response, the Government provides some basic information on Investigator Church's training and experience in a footnote [Doc. 51, pp.1-2, n.1]. At the motion hearing, the Government asserted that Investigator Church would provide some testimony stemming from her experience and training. The Court acknowledges that nearly a year elapsed between the filing of the Defendant's motion and the February 17, 2021 motion hearing. Therefore, to the extent it has not yet done so, the Government is **ORDERED** to provide the Defendant with information on Investigator Church's qualifications to include her training and experience.

[5] In its response, the Government states that Investigator Church will not testify about red flags but other witnesses "may testify bout the 'red flags' or explain the origins of the investigation, which was based in part on the high volume of opioid prescriptions emanating from the defendant's clinic" [Doc. 51, p.3, n.2]. However, the Government reversed this position at the motion hearing, stating that Investigator Church would testify about the origins of the investigation and the red flags that indicate diversion. The Government stated that Investigator Church would not give an opinion on whether TVPS exhibited the red flags that indicate diversion, unless the Defendant challenged the legitimacy or propriety of the investigation of TVPS.

The Court also finds that Investigator Church's testimony on the characteristics of drug diversion will assist the jury. Licensed medical practitioners prescribing drugs illegally do so with the appearance of legitimacy. *See id*. at *4 (holding that because "pill mills are designed to appear legitimate," the detective's testimony on the characteristics of pill mills would assist the jury). Thus, courts have permitted law enforcement officers to testify about red flags or the particular characteristics of the illegal diversion of controlled substances. *Id.* at *5 (finding the detective's testimony "will help the jury make sense of the evidence because average jurors are not equipped to spot the seemingly innocent signs of a pill mill"); *see United States v. Perry*, No. 90-1825, •1991 WL 147466, *2 (6th Cir. 1991) (holding that diversion investigator could properly testify to the "'modus operandi' of illegal pharmaceutical drug trafficking"); *c.f., United States v. Seelig*, 622 F.2d 207, 213-14 (6th Cir.) (affirming DEA compliance officer could testify about "what the routine practices of pharmacists should be according to the regulations"), *cert. denied*, 449 U.S. 869 (1980). This Court has permitted a DEA Agent to testify regarding the characteristics of an illegitimate pain clinic in at least two cases. *United States v. Sylvia Hofstetter, et al.*, No. 3:15-CR-27, Doc. 551 (E.D. Tenn. Aug. 19, 2019) (Debra C. Poplin, MJ); *United States v. Sandra Kincaid & Wendi Henry*, No. 3:10-CR-160, Doc. 168 (E.D. Tenn. Oct. 10, 2013) (H. Bruce Guyton, MJ).

Finally, although the Defendant does not appear to be contesting the reliability of Investigator Church's testimony, the Court finds that based upon the application of her special training and experience in the field of drug diversion, her proposed testimony about red flags is reliable. *See Stapleton*, 2013 WL 5966122, *6 (finding detective's testimony on the characteristics of pill mills to be reliable based on his experience, training, and specialized knowledge in the field).

However, the Court finds that Investigator Church may not testify that TVPS exhibited the red flags indicating diversion, because such testimony impermissibly treads upon the province of the jury in determining the ultimate legality or illegality of the Defendant's actions.  Like all evidence, expert testimony is subject to Federal Rule of Evidence 403, which "permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'"  *Daubert*, 509 U.S. at 595.  "When a law enforcement expert offers a 'point by point examination of profile characteristics with specific reference' to the defendant, there is a particularly acute risk the jury will convict simply because the defendant fits the profile."  *Stapleton*, 2013 WL 5966122, at *7 (quoting *United States v. Quigley*, 890 F.2d 1019, 2023 (8th Cir.), *cert. denied*, 493 U.S. 1091(1989)).  Thus, in *Stapleton*, the court held that the detective's testimony that the defendants' clinic exhibited the characteristics of a typical pill mill "carrie[d] a significant risk of unfair prejudice without adding much probative value," because the jury was fully capable of drawing that comparison itself.  *Id.* The court further concluded that the risk of unfair prejudice substantially outweighed the minimal probative value of the detective's own analysis.  *Id.*; *see* Fed. R. Evid. 403.  Like the court in *Stapleton*, the undersigned finds that Investigator Church may testify to the characteristics or red flags of diversion generally, but "applying that testimony to the facts of this case is up to the jury." *Stapleton*, 2013 WL 5966122, at *7.

The Government argues that the Defendant's arguments or challenge to the propriety or legitimacy of the DEA's investigation of TVPS would open the door to Investigator Church testifying about whether TVPS exhibited the red flags of drug diversion.  The Court finds that the Government is essentially arguing that the Defendant's challenge to the investigation would increase the probative value of Investigator Church's comparison of the red flags to TVPS such

that the risk unfair prejudice of the comparison would no longer substantially outweigh the probative value of the testimony. The undersigned finds this proposed rebalancing of unfair prejudice with probative value can best and perhaps only be assessed by the District Judge in the context of the trial. Thus, the Court holds that Investigator Church may not testify about whether TVPS exhibited the characteristics or red flags of drug diversion. If the Government seeks to have the District Judge reweigh the probative value of such testimony at trial, it must move for the District Judge to permit the testimony, and it must do so outside the presence of the jury.

In summary, the Defendant's Motion to Exclude Expert Testimony of DEA Agent Merry Church [**Doc. 41**] is **GRANTED in part**, in that Investigator Church may not provide expert testimony comparing the red flags or characteristics of diversion to TVPS. Whether the Defendant may open the door to such testimony is a matter for the District Judge to determine within the context of the trial, but the Government must raise this issue outside the presence of the jury before eliciting any comparison by Investigator Church. Investigator Church may properly testify about the characteristics or red flags of diversion generally. Investigator Church may also properly testify about the investigation of TVPS, including why the diversion investigation began, and about the structure of the CSA, scheduled drugs, and the licensing of medical providers to prescribe controlled substances.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Dr. Munzing may properly provide expert testimony with regard to his report and Investigator Church may provide expert testimony about the general characteristics or red flags of the diversion of controlled substances. The Court **ORDERS** as follows:

> (1) The Defendant's Motion to Exclude Medical Opinion [**Doc. 39**] is **DENIED as moot**;

(2) If the Government seeks to have Dr. Munzing testify to matters beyond those described in his report, it must move to do so in advance of eliciting the testimony and outside of the presence of the jury;

(3) The Defendant's Motion to Exclude Expert Testimony of DEA Agent Merry Church [**Doc. 41**] is **GRANTED in part**, in that Investigator Church may not provide expert testimony comparing the red flags or characteristics of diversion to TVPS;

(4) Whether the Defendant's challenge to the investigation of TVPS opens the door to the prohibited comparison testimony by Investigator Church is a matter for the District Judge to determine within the context of the trial. The Government must raise this issue outside the presence of the jury before eliciting any comparison by Investigator Church; and

(5) To the extent it has not yet done so, the Government is **ORDERED** to provide the Defendant with information on Investigator Church's qualifications, training, and experience.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge

15